Case number is 21-1700 Tawanda Hall et al. v. Andrew Meisner et al. and 21-2956 Estate of Dell Johnson v. Andrew Meisner et al. Oral arguments to be 20 minutes shared by plaintiffs and 20 minutes shared by defendants. Ms. Martin for the appellant. I think we're worn out. We're going to have to do this another time. Okay, go ahead. Good morning. Christina Martin for the eight plaintiff appellants in Hall v. Meisner. And how are you dividing your time? By party. Okay, by party. By case, you mean? That's what I mean, yeah. Yeah, okay. Not by substance at all? Or whatever? There are some differing claims in each case. Well, you do whatever you all want. Sure. I've reserved five minutes for rebuttal. May it please the court. The government and its private partners took homes belonging to the eight Hall appellants and Dell Johnson. Each home was worth far more than the respective homeowner owed the government. For example, Tawanda Hall's home was worth approximately $308,000, and she only owed $22,000 in taxes, penalties, interest, and fees. We know about all these disparities, just to conserve your time. Sure. Did they all have fee title, or were they subject to other liens or mortgage? They all had fee title. Thank you. And everyone agrees that if these homes had been sold at an auction, that the homeowners would have had a constitutional right to go collect the surplus proceeds from the sale of those properties. But because the government skipped the auction and conveyed it for just the taxes owed, they claim that no taking occurred. This makes no sense. This may not be relevant, but indulge me. There was no mortgage on any of these homes, correct? Correct. I believe that's correct. If there had been a mortgage, could the government have done the same thing, or would they have some statutory obligation to have an auction if there's a mortgage on the home? Under the statute that existed at the time, it would extinguish all mortgages and liens, which I actually think conflicts directly with the Supreme Court's decision in Armstrong, United States v. Armstrong, which we talk about. Is that the Phillips case? No. The United States v. Armstrong is the one with the ship builder where it was foreclosed and the liens were extinguished. Okay, that answered my question. Yes. The Constitution cannot be so illogical that if the government sells your property at an auction, you get paid, but if it decides to give the property away, you don't get paid. Right. One could sort of think in terms of what Richard Epstein calls the anti-circumvention principle. One could think of that and say we can't let the state do things that just obviously circumvent a constitutional guarantee and deprive it, make it hollow. But if we set that to one side and we want to kind of look at traditional property interests, say English common law or pick your time, 1791, 1864, what's your best authority? Well, first of all, there must be some continuing property right that itself, apart from fee simple ownership. So the Michigan Supreme Court says you have a continuing right to the surplus, but there must be some continuing property right in between having fee simple and the surplus right. The surplus right doesn't just sort of like quantum mechanics pop out of nowhere. It traces back to fee simple in all likelihood. So how would you characterize that intermediate property right and what's your best authority in English or American legal history? I'm sorry. That's what I'm thinking about for those things. Yeah, I think that's a great question. So I view that as the right to the equity. That's essentially what we talk about in our brief and we talk about it. Did, I mean, Raffaele is kind of a squirrely opinion in some ways. I mean, it's just dealing with its facts, but it sometimes has intimations beyond them. Do you read Raffaele not to, doesn't Raffaele say you don't have right to equity? Raffaele, they say that, but on the other hand, they also say that they were bound by the question presented, which is whether you have a right to collect the surplus proceeds. And I think English common law makes very clear that you have a sustained right at the time of foreclosure and Raffaele agrees with it. They just call it something different. They call it surplus proceeds. What do we do with, the cases say that the property interest should be defined by an independent source such as state law. But from what I can tell, we only ever look to state law. I don't know what, are there examples? I mean, because here I would say that Raffaele is, let's say at best, neutral on this question of whether you have a property interest or not. If it's neutral, then the state hasn't recognized the property interest. Right? So the tie in some sense goes to the other side, unless there's an argument that, well, under the reasoning of it or something, there's an independent source. It's the common law, Blackstone, Cooley, whoever it is, and therefore I can use that to recognize the property interest. That's the external source. But I'm struggling to find kind of case law that would allow me to do that, as opposed to just saying, look, we've said state law. The state Supreme Court hasn't really recognized it, so I'm not sure what to do. Sure. So Webb's Fabulous Pharmacies rejected the Florida Supreme Court's reading of your right to interest on the money that was deposited there. And they said that ultimately the common law controls. You have this common law property right, and it doesn't matter what state law, what the Florida legislature, or what the Florida Supreme Court finds. You have this common law right. And essentially we're arguing here, you have this common law right that, again, arises from the fact that you owned the house in the first place, which nobody disputes that. And so the only reason the government can take private property to collect a tax debt is because that's worth substantially more than that debt, is because you have that just compensation right that's preserved ordinarily in the foreclosure process and lives up until the time of the first fair market sale of the property, which in Raffaelli was the auction. And here, I suppose under Raffaelli, you could say that the right survives until the first fair market sale or until that right is extinguished by the government. I mean, surely I would think you're not conditioning your entitlement to money on a fair market sale. I mean, let's say they convey it to some other county agency, which then just uses it in perpetuity for its own reasons, right? That's true, Your Honor. And I think that at the time that the interest is absolutely extinguished, the property owner's interest is absolutely extinguished, you have a taking. Well, yeah. Are you arguing in that instance where it was just given to the county for their use? Would you be able to come in and have your experts value the property and have a claim for damages? Yes, Your Honor. And this happens all the time in takings cases. How do you square that, or do you need to square that, with the Michigan Supreme Court statement in Raffaelli that you're not entitled to fair market value? You only get the surplus from the particular sale. Well, I think Raffaelli was a different case because, again, those properties actually followed the common law procedure where they were taken and sold to auction. It wasn't until the very end that the government strayed from the common law procedure. Here the government chose to use these properties. The city of Southfield wanted them for a public purpose, and so it's really more of a classic eminent domain situation. To try to understand this right of equity as you're arguing it, if there is, in fact, a foreclosure sale or auction or whatever at some point later, is that value dispositive, or can you come in and say, you know, I mean, geez, we're in an economic downturn. There wasn't the usual demand or something, you know, to say I'm getting underpaid. It wouldn't be dispositive in either direction, so potentially it could be for more, it could be for less, but it would be excellent evidence of what the value was of the property when it was taken. That would lead us to a conflict with Raffaelli itself, even in foreclosure cases, wouldn't it? If we said that in an equity right case, that the foreclosure, well, I mean, it would seem like that opens the door to us just squarely disagreeing with Raffaelli, which is a dicey thing for us to do on that point. Sure. So I suppose the easiest way around that is, again, you look to the point when they stray from the common law principle that the government has an implied contract at law, as Blackstone called it, to sell the property to the highest bidder and then refund the surplus proceeds. And so that would allow you to actually not conflict with Raffaelli but be consistent with it. And again, Raffaelli expressly recognized the government's right to take private property is extinguished the moment that the tax is collected. And here the government took much more than that. I would like to briefly touch on the excessive fines claim. Well, if we prevail on the takings claim, it doesn't matter. This was dismissed on a 12B6 motion, and so we would request that this court also reverse that. Because, again, here, if the government— You've got five minutes rebuttal, which is a lot. Yeah. So if you want to eat into that, you can continue. I'll reserve it for rebuttal. Thank you, Your Honor. And when you come back, I mean, I don't mean to ask a hokey question, but you give a number of different sort of Anglo-American legal history authorities for this right of equity business. When you come back, just tell us what you think are your two or three strongest. Okay? Now, so do we hear from your colleague now? Is that the way it works? Okay. Mr. Smith? I'm Scott Smith. I'm a co-counsel on both cases, but I'm—actually, let me misstate that. I'm co-counsel on the Hall case, and I'm one of the co-counsels who is now Ms. Martin on the Dell job. Could you focus on the race judicata argument? Because it seems like a lot of these plaintiffs could have brought these claims in the earlier stakeholder action. Is that not the case? And why aren't their claims barred by race judicata? Well, the race judicata issue actually has been decided by the Sixth Circuit by a different panel under the exact same facts, but in a bankruptcy context. What case is that? That case is Lowry v. SNRI, which I call Southfield Neighborhood Residential Initiative, which— What's the site on that? I'm sorry? Do you have the site for that decision? It was not published. All I have is the case number. What's the case number? I'm sorry? The case number? Is 21-17-12, December 27, 2021. They didn't publish that? They didn't publish it. They remanded it because there were still some open issues. What did they say about it? I mean, I think Judge Bush makes the point that these people could have made this argument. It's not a case like where there's a legislative change in law or something like that, that these parties could have made the same argument that the people in Wayside Church made, that the people in Raffaelli made. They chose not to make it. Why is that an exception? I mean, usually you don't get out of race judicata when you just fail to make an argument you could have made. There's several very specific reasons with authority. First of all, in the Dell Johnson case specifically, the only state action he had besides the actual judgment of foreclosure was a motion to set aside, which was done, it's in the record, it happened on April 30, 2018, and it dealt solely with whether he had sufficient notice of the foreclosure hearings. There were no issues on takings. There was no issues about post-foreclosure issues. What kind of proceeding is this? This was in the Dell Johnson case. There was an order, I believe it's part of this record, which now Federal Judge Jarbo, she was in the Western District of Michigan, she was a judge. It's case number 16153362CZ in Oakland County. It was a motion to set aside the foreclosure. And it only dealt with, she says specifically, a due process argument of notice. And under Michigan statute at the time, MCL 211.78L, The Johnson case is kind of weird in several respects, you know, Rooker, Feldman and all that. But what about a case where, you know, it's just a straight up case, somebody's unhappy with the property being taken. I mean, I think there's some of those in here. I don't know if they're your clients or not, but we have some where they just, you know, it's normal litigation and they just don't make the argument. They make other arguments. And now they want to say, oh, we want this one. And, you know, the finality of court judgments is a really serious thing. And we usually don't let you re-litigate stuff. Transactions and occurrences. Well, if they had a fair shot, and I direct you to this court's decision in Harrison v. Montgomery, if they had a fair opportunity to present the argument and there was no... Of course they had a fair opportunity, right? In a regular case, nothing prevented them from making the argument. Well, no, there's a preclusion trap, which was corrected by Nix v. Scott Township. At the time, if you brought it in state court... I never brought it in state court. I'm sorry? Well, if we're dealing... Some of these cases prior to litigation were state court, where they could have made the argument. And they didn't. Okay, this goes back to the first question you asked to Ms. Martin. I think you're referring in the Hall case. There was a civil rights case that was brought in February of 2017 by four of the plaintiffs in the case that she's primarily arguing. And that civil rights case, it really, it's very poorly drafted. One could, giving them the benefit of the doubt, they could say that you could have brought up other cause of actions, although it was prohibited. But going back to your first point, under... Well, my argument is, when did the taking occur? There's some continuity of a right after the foreclosure, because in Michigan, it's just a judgment. There's not an auction. There's not a sale. It's just a judgment. The property gets sold or transferred afterwards. So in that civil rights case that was poorly drafted and summarily dismissed, which didn't have a takings claim, which they couldn't bring under Michigan law, but anyway, the taking didn't happen until after the case was filed. What if the taking did? I mean, that's a very helpful point that you make, that maybe the taking happened after some of this litigation. What if it happened before? You had a taking that happened. This kind of scenario screams out taking. It doesn't take a legal mastermind to come up with this claim. And if you don't make it, and now there's a state court final judgment as to this transaction occurrence, then why isn't at least that hypothetical plaintiff out of luck in this case? Well, it depends what issues are raised, and it depends on what parties made them. You know, you have to go, because like in... Okay, let's assume, you know, you have... Judge Tarnow said... Let's take 30 seconds, then we've got to move on to the other side. So you can wind up with whatever you want to say. The... Judge Tarnow even said that the... that he wanted to do race judicata just against one party. And another important point is in a recent case by Judge Parker in the Eastern District called Pallartha v. Wayne County, it's important to distinguish what was litigated and not litigated in state court. If you only litigate the judgment of foreclosure, there should be no race judicata, because all our claims come, are our post-foreclosure remedies. Okay, that's helpful. And there's just one... You've got your money's worth for that 30 seconds. Okay. Seriously. Then, just can I make one more point? Real quick. As far as the property rights, in this case, going back to your original point about time and continuity of a right, in Michigan, when someone gets their property foreclosed, you don't know if the government's going to auction it, if they're going to give it to a government at the time, or they're going to give it back to the government. So, like you said in the case of WCI versus Ohio Public Works, where they're trying to get rid of a liquor license, you're having the property right dependent on a procedure you have no control of. And that's exactly what is happening here. You don't know what's actually going to happen, and the situation is manipulative. And final point, a case was remanded. First of all, the Michigan statute was changed. And in Proctor versus Saginaw County, they referenced another one of our cases in state court. If Raffaelli's retroactive, which the Court of Appeals has stated, we win. And that's likely to happen. Okay. We're going to have to end there. Thank you. Thank you, sir. We'll hear from the defense side here. And if you could just let me know how you're dividing up time and substance, if you're dividing substance. Certainly. May it please the Court, John Plumbing on behalf of the Oakland County Defendants. I'm going to take eight minutes of the time, probably. We have slightly different issues, so I'm going to address. All right, that's fine. Okay. Thank you. The appellants in this case have failed to state a claim against Oakland County, because in order to have a compensable takings claim, one must first establish a property interest that was deprived from them. Oakland County did the depriving, you're saying. Oakland County did not deprive. No, but you're saying they must and they didn't. Some governmental entity must deprive a citizen of a property interest. You're just saying we didn't do it. Is that right? Correct. Well, we certainly did not do it. I'll let the codependents speak for themselves, but I don't believe anybody. You're saying the city did it and you didn't? No, I'm saying nobody did it. There's no property interest that was deprived here. Who took the title of the property to satisfy the tax debt?  The city exercised its statutory right of first refusal. Is that your answer? You took it. What? The UFE's title to the property? We seized the property, and the Supreme Court, Raffaele, our Supreme Court said. Okay. I mean, you took title. We obtained title, but the word taking, I don't want to con you. I get it. I'm just teasing. Yeah, okay. But again, state courts. You just seized the plaintiff. The state courts define what those property interests are, and in this case, our Supreme Court went through a thorough and detailed analysis, Blackstone, Cooley, our constitutional convention, our constitutional precedents. We've read it. And they said unequivocally. Well, what did they say? They said unequivocally a property interest exists only in surplus proceeds Where do you get that? First of all, it's a case where there happened to be a foreclosure sale. I don't see such an unequivocal statement that the only property right is in the proceeds. It was just like on that fact, on that scenario. And it almost seemed to go to valuation as opposed to the scope of the property right. No, because the exact same arguments that are asserted in this case were asserted in Raffaele, that those plaintiffs should be entitled to their equity or fair market value in those properties. And Ms. Martin, to her credit, raised those arguments, and she convinced one out of the six justices to that. So the argument is that in a case where a foreclosure sale takes place, the plaintiff is not entitled to prove some other amount, right? That's what happened in Raffaele. The plaintiffs there said, hey, the auction shouldn't be the end-all, be-all, because who knows, it could be a sham, whatever, something could happen. We should be able to prove another amount. Michigan Supreme Court says no. You get the surplus proceeds, right? Michigan Supreme Court said your property interest was only in the surplus. They said you get the surplus proceeds. But everything else they say in that case seems to support the plaintiffs here, right? No. You can't just compensation means market value. You can't take more property than is necessary for the taxes. The state can't define property rights out of existence. There's some kind of irreducible minimum, right, at common law. I mean, all of that seems to support their argument. A direct quote, Judge, from this opinion, we reject the premise that just compensation requires the plaintiffs be awarded the fair market value of their properties. Let me ask you this. The question of just compensation, isn't that – that's not really a question of state law. That's a question of federal law, isn't it? Well, in order to obtain just compensation, one has to – No, the question of just compensation is a question of federal law. Wouldn't you agree? No, because the question of – No. I thought it was the question of whether there's a property interest, of whether that's state law. That's state law. But just compensation is something that we decide as a matter of federal law. But you don't get just – We may have a disagreement with the Michigan Supreme Court as to how they define just compensation. But that doesn't mean we defer to them on just compensation. Well, one is not entitled to just compensation unless they're first deprived of a property interest. And on that question, you do defer to the state Supreme Court on their pronouncement of property law. Within limits, C.E.G. Webb, C. Phillips, et cetera. So Webb is an interesting case because there's a direct quote out of Webb that says – and it analyzed the same Florida precedents. And they say the creditors, who were the movements in that case, thus had a state-created right to the respective portions of the fund. It's a direct quote out of Webb. So in every single case – You can't, you know, vaporize liens and stuff like that. Phillips is an interesting case, and it's a case that supports our position. Because what Phillips says is, is that in that case, the question before the court was, the interest that accrued on the principal balance of client money in a lawyer's IOLTA account, the question was, was that actual property to the client? And in that case, Chief Justice Rehnquist went through a detailed analysis on Texas law. Because Texas law was the governing component of that case. And after that analysis, he said, yes, Texas law supports that the interest belongs to the client. Therefore, they're entitled to it. There's never been a case where this court has said that a state Supreme Court's pronouncement on the existence of a property right should be overruled based upon a federal – Does the state just define the property right out of existence, though? Can they say, for purposes of what a property interest means for takings law, a fee, simple title, will not be recognized? The state – well, the state consults its own common law, which is exactly what the Raffaelli Court did. Is there no irreducible minimum of property right, common law rights that would be protected? Like the states could just define them to say – I mean, I thought there were at least some cases that said a state really can't redefine – maybe it's Phillips – you can't really redefine something to be a non-property right. That's what we would all agree is a property right. Well, even going back to Erie v. Tompkins, that case stands for the proposition that there is no federal common law, that we always look to the state precedents and to the state jurisprudence to determine whether or not a property right exists. And there's no better body. Is that right, though? Is this a – I mean, it's not a diversity case. I mean, are we covered by the Rules Decision Act here? I mean, I don't even know if that's right. I mean, maybe it is. The point is that the best body to determine whether or not a property right exists under Michigan law is the Michigan Supreme Court. And they looked at this, and they determined that a property right only exists in the surplus and that the county, importantly, was entitled to seize the property, and it was entitled to obtain and retain exactly what it is owed and no more and no less, and that the facts in this case are completely undisputed that that is exactly what occurred. Oakland County was entitled to seize the property. But if you're wrong – I mean, if Raffaele is properly read to speak to valuation, not to the scope of the property right, then otherwise Raffaele is looking at Anglo-American legal history, which – and as Judge Nalbandian points out, most of what they say there seems to support the plaintiffs. I disagree with that. I don't believe that – Let me ask you this question. So we have an undisputed property interest in – when they have fee simple title, they've got a property interest in the house, obviously. And we know that at some point in time, let's say if there is in fact a foreclosure sale, they have a protected property interest in the surplus, right? What's in between there? What property interest is it that gives rise to a surplus? I mean, your right to surplus doesn't, like, come out of the ether, right? It comes from somewhere. It's like, you know, you had something in the beginning when you had your house. You have this thing here. There must be a connection. This isn't just an island over here. There must be an antecedent interest. What is it? Well, when these plaintiffs failed to pay their property taxes, they forfeited their property, and the county was absolutely entitled to sell those properties. That's what Raffaele says. So there was absolutely nothing wrong with that. The property interest that remains following that sale is only in the surplus. So upon the foreclosure, right then they have this surplus thing. But, I mean, doesn't that reduce this whole thing to a pretty silly exercise as a constitutional matter? Like, any governmental body can just say, okay, I transfer it to my subunit here for a buck. And then it's like laundering it. And then they can go out and sell it for $300,000, and the property owner is out of luck because the entity that took didn't do a foreclosure. Is that where we're at? Is that the law here? No. I mean, if the entity that obtained the property, in this case, that seized the property, Oakland County, is entitled to keep what it is owed, and that's all that it got in this case. Right. So the answer to my question would be yes. Oakland County can sell it for a buck to some other governmental entity. And then the plaintiffs, all their rights are forever extinguished. It doesn't matter if that other entity sells it for $300,000. The entity that took the property didn't get more money, and so you have no surplus right. If it was not a surplus, it was not a property interest that was deprived. And the surplus is only measured by the taking entity's disposition of the foreclosed property. It's measured by the auction sale that was required by statute. By the taking entity's disposition of the property, right? It's determined by what the purchase price is by a willing buyer in a marketplace. I'm just talking about who the seller is. The relevant seller, the only seller as to which the surplus right exists, in your view, is the party, the governmental entity that took title. You say they only have a right to surplus proceeds, right? A piece of property is going to have many different sellers over time. The seller, I'm just trying to clear up points that are not disputed. The only seller that matters for purposes of a surplus is the party here at Oakland County that took title to the property, right? Only if the property is sold at auction, yes. And that would be a county auction that's required by statute. Right, and so if Oakland County takes it and transfers it to the treasurer of Southfield or something, and the treasurer of Southfield then does an auction, the plaintiffs are out of luck because the Southfield treasurer didn't take any property rights, Oakland County did. Is that fair? I believe that that's fair, yes. And that's the way it works? Well, the way that it works is there's a statutory requirement that the county offer to the municipality the right to purchase it. Well, be that as it may, doesn't it seem like a pretty silly constitutional arrangement to say, yes, you have this hallowed property right, you know, which goes way, way back in Anglo-American legal history. But it only goes to the, by happenstance, it only distills down to the surplus proceeds in a foreclosure sale by the very entity that took it, and if that very entity transfers it to some sister entity for a buck and they sell it for the 300 grand, you're out of luck. The exact argument of whether or not equity should be the measure of damages, which is what the plaintiffs are requesting. I know, what, Raffaele? Well, Justice Viviano addressed this very issue in his concurring opinion. I'm way out of time. Okay, I'm not talking about the Michigan Supreme Court right now. I'm talking about, like, how in the world does this make sense as a matter of federal constitutional law and the court's vigilance against circumvention thereof? The court's, this court's role is to enforce the property rights that are created under state law, and our state Supreme Court has spoken on this issue. I thought our role was to enforce the Constitution. But once, I'm sorry, we kept you a long time. You can take 30 seconds and wind up. Okay, very briefly. The concurrence opinion, the concurring opinion, Justice Viviano says, consequently, the majority's view of the case would seemingly be that if property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck. No proceeds, let alone a surplus, have been produced or retained by the government. That was his argument as to why equity or fair market value should be the measure of damages. Nobody expressly disagreed with him, but I don't want to get in the weeds on that. Right. And this is, I think, a really important point. One of the reasons that Justice Zara made the point that they rejected that premise was, it's twofold. First, the only property that was taken was the surplus, and second, plaintiffs are responsible for the own loss of their properties. All right, we need to hear from the next person now. Thank you. Thank you. Thank you. Thank you, Your Honors, and may it please the Court. Michael Knobloch on behalf of the Southfield Defendants. The forfeiture of plaintiff's properties for not paying taxes is not the kind of government action that classifies as a taking under the Fifth Amendment. The takings clause is meant to compensate when the government takes property for a public purpose, and in that context, the property owner has no choice but to relinquish that property. Here, there was a choice. They were given multiple notices, multiple chances to redeem. They could have sold the property to retain their equity. They could have even gotten a home equity loan, like they referenced, to save their equity that way and pay the taxes to reserve it. They chose not to and title to the property vested. Well, they had no choice but to pay the tax, right? They did not have a choice to pay the tax. That's correct. So ultimately, they had no choice. So you're saying it's an excessive fine issue? I'm saying what it is. They're wrongdoers because they didn't pay their taxes, and the punishment is you lose the entire equity value in your house. Is that right? That is not correct, Your Honor. What I'm saying, and this goes back to the Griffin case that we cited in our brief, since the founding of the Constitution, it was well understood that there's a duty, an implied duty, to pay taxes and that your property will be forfeited if you don't pay those taxes. And that's exactly what happened. Really? Is that like Anglo-American legal history? There's always been this condition, you know, if you're $8 short on your taxes and you sort of sleep through all the notices, you lose your castle? Is that? That is correct. Really? What authority do you have for that proposition? Sure. So first of all, the Supreme Court of the United States, Springer v. United States, 102 U.S. 586. Historic authority, though. Okay. In Griffin v. Mixon, 38 Miss 424, Justice Handy goes over these principles, and these were known at the time of the founding fathers that taxes would be paid. This goes back to debts that were paid to the crown back in common law England. Unfortunately, there's not a strong English common law source on point with this because in England we had a feudal system related to property. Now that was kind of kaput by about 1300, 1400 maybe. And it still sort of remained. As far as completely free property holders, that was somewhat of a new thing at the time of the founding fathers and certainly in colonial America. And that's where we can see in the colonies early on that taxes are placed, and if they're not paid, property is forfeited, entire property. This is something that's been known since the beginning. Do you have authority for this? Did Cook write about this? I mean, where is this coming from? I mean, the idea that you're saying that colonial Americans had no rights to any equity surplus period, right? That's correct, Your Honor, because it's a forfeiture. And so Raffaelli was wrong, at least on the question whether there was a taking. I believe it was as far as the taking, and I think that's where it gets a little mucked up because the Fifth Amendment is not even involved here. And we see our Supreme Court recognize it. Do you have any case that backs you up on this idea? I do. Springer v. United States, 102 U.S. 586. Our Supreme Court recognized the same duty to pay taxes, the power of the legislature to provide for forfeiture of entire property when that duty is not met. And what the Supreme Court said in that case is if there's wrong or unnecessary harshness, like we've been talking about here today, that was for the legislature or the people who make legislatures to correct that. We see this again in King v. Mullins, 171 U.S. 404. It's an 1898 case. Chapman v. Zobelin, same situation. And Nelson v. City of New York, 352 U.S. 103. The only difference in the later cases, in the early cases, they actually say it can be done through summary proceedings without even having much of a court side of it at all. The way that this case law developed and that our Supreme Court now stands is that this type of forfeiture can take place so long as you are getting that due process afforded. In fact, in Nelson you would concede that under the Michigan Constitution it is a taking by virtue of the Michigan Supreme Court decision, but your argument is not a taking under the federal Constitution. Is that your argument? That is correct, Your Honor, because clearly the Michigan Supreme Court said that you do have a right to these surplus proceeds from a tax sale. I'm talking about under the federal Constitution, and I think our Supreme Court in the cases that I just cited are pretty clear on this. In fact, in Nelson the court said, where you're given notice and an opportunity to be heard and the property owner fails to redeem the property, nothing in the federal Constitution prevents retaining the property or the entire proceeds from a sale. The Eighth Circuit in Tyler v. Hennepin just very recently in 2022 put forth the same idea, that plaintiffs had adequate notice and multiple chances to avoid the forfeiture of any surplus, and that it could have retained by selling the property. Did Tyler go off on the specifics of the Minnesota statute? I thought Tyler recognized that at common law there might be a different result, but because of the way the Minnesota statute had been drafted, that's why it came out differently. They did recognize that there may have been a common law right under Minnesota law, as far as any kind of surplus, but they did also recognize that the legislature may make legislation that overrides that. And I think that's one of the key points here in those earlier cases that I pointed to, is that the legislature can make laws to collect taxes that does this sort of thing and puts this sort of procedure into place. And therein lies where the remedy comes from. If you don't like the harshness, stop electing people that put this into law, start electing people that will change this. Okay. Thank you. Thank you, Your Honor. We'll hear from Mr. Knobloch. One question just for... Oh, I'm sorry. I apologize, sir. Who's left? Mr. Nichols. Okay. And if somebody, if you could tell us... Just come on up. But one thing I'd like to hear from your side generally is my understanding... I'll wait until you come up. It seems like there are some plaintiffs who are just clean plaintiffs in the sense of no prior litigation, no raised judicata, et cetera. Is that accurate? I think there are very few, Your Honor. There are some. There are some. Okay. Anyway, go ahead, sir. Whatever you wanted to talk about. Thank you, Your Honor. May it please the Court, Matthew Nichols, appearing on behalf of the Southfield Neighborhood Revitalization Initiative, Southfield Nonprofit Housing Corporation, Etuel Libet and Mitchell Simon in both cases. One thing, I think that Brother Councils Fleming and Knobloch, we share their platform as far as the points and the issues about the takings law and the application of this case. I think where that goes one step further, however, and what plaintiffs have asserted in their reply brief, which was a little bit more unclear in the district court, was can that claim extend to a subsequent purchaser of tax-foreclosed property? Our answer to that in the district court was no. Our answer to that remains no right now. What we do is we look to, first, the former Michigan General Property Tax Act, specifically MCL section 211.78L, which had a provision in the former statute that said the former taxpayer was precluded from filing a claim for possession or money against a subsequent purchaser of tax-foreclosed property. Now, since the state legislature has amended several provisions of the GPTA, that section now states that an action to recover proceeds from the sale or transfer of property foreclosed for nonpayment of real property taxes under this act must be brought as provided under section 78T. MCL 211.78T, which was created by the state legislature recently, does not provide a cause of action against a subsequent purchaser. What that statute provides for is a claim to recover proceeds from the foreclosing governmental unit. I don't think this case is going to turn on the particulars of, frankly, a state statute. The definition of a cause of action in a state statute. I think their argument roughly is there's a big difference between sort of a bona fide open foreclosure sale purchaser on the one hand, and on the other, an entity that is almost like an alter ego of the entity that takes title. And what's your response to that? I mean, as a theoretical matter, why doesn't that kind of rule make sense if it's like an entity that's obviously easily controlled by the taking entity, for example? Why shouldn't we treat them as the same? Your Honor, with all due respect, I disagree with the characterization that the NRI or the nonprofit are. So there's rule and application. Am I correct about that rule? Does that make sense? And then you can apply it to your facts. The rule of? What I just said. If it's basically an alter ego, they're totally controlled, dominated by the, let's say, by Oakland County. No offense. I mean, I'm not suggesting that happened here. Why wouldn't we treat the transferee the same as the transferor if the transferor controls the transferee as a rule? Make sense? In this case, that wouldn't be the case. I know. I'm talking about the rule, and then we can talk about how it might apply to these facts, right? Okay. Let's say Sunrise County takes property. Sunrise County then has the Sunrise County Development Association, and they totally control that, okay? And they transfer it to them for a buck. Wouldn't it make sense to treat them as the same for purposes of a takings analysis? I think if it's a subdivision within that governmental unit, perhaps. All right. So if they control it, then we can treat them the same. Is that fair? In instances, sure, I guess. Okay. All right. Well, now you can make your argument. I mean, I gather you're going to say that's not our case, right? Correct. All right. So go ahead. And for the reason, Your Honors, they're separate entities. Did you pay an arm's length price for the property? The property that SNRI paid to obtain the properties was what the minimum bid was that the city had paid. So, no. The minimum bid is the tax liability, right? Correct, under the GPTA. So the city paid the county, the city paid the tax liability to the county, and then you paid the city the tax liability? And the title went from the city to SNRI. Okay. So nobody's ever paid fair market value for these properties. Is that right? Well, here we're getting into factual issues that, one, weren't developed in the lower court. Somebody did pay fair market value for these properties? I'm sorry. I'm curious. We're taking the facts on the complaint, right? And nobody paid fair market value, right? Is that what you're saying? That's what's alleged in the complaint. I mean, you're accepting that, right? For purposes of a motion. Sure. Yeah, we're not going to hold you to it later. Sure. But did any – was the property offered to other people? It just seems like an inside deal, like, okay, the city gets to pay this, they get it, and then they get to sell it to whoever they want for this, and nobody ever pays market value. Somebody got a windfall, right? I mean, you're at the end of the chain. Right. I see my time has expired if I have some time. Go ahead. Yeah. So I think what gets lost in a lot of these allegations that there are individuals that are earning individual remuneration or receiving an individual benefit. Plaintiffs allege that the city mayor and the city manager, who are two of nine directors on the nonprofit, one of whom is a manager on the SNRI board, that they are somehow receiving kickbacks or being compensated for their work in those capacities. That's simply not true. Okay, but it is true that there was no other – nobody else could bid, outbid the SNRI here. Is that right? It wasn't open to the public. In a sense, like Judge Numbandian said, it was an inside deal in that respect. It wasn't open to the public. Well, I think it's by statute. How about a yes or no? That's correct or not correct? Correct. Okay. But by statute, they had that right of first refusal to buy that purchase. The city did, right? Correct. And the county was obligated at the time to offer those properties to the city. That's fine. No one on the nonprofit or – Okay, all right. No one on the nonprofit or NRI were targeting these properties. We understand. Okay. We're not – okay. And I think if I could – Your red light's on, so you want to wrap up for like 15 seconds. Yep. As far as the unjust enrichment claim goes, I think the district court's – because that claim was specifically alleged against the NRI and the nonprofit, I think the district court's decision dismissing that claim was proper, mainly because if you acknowledge that the party can bring a claim for unjust enrichment against a defendant who did not specifically receive the benefit from the plaintiff, like we have in this case, that that claim can survive a motion to dismiss only if the defendant had engaged in misleading conduct that led to the plaintiff's loss. In this case, that never – we assert that that never happened. Remaining arguments, Your Honors, I rest on the briefs. Very well. Thank you for your time. Thank you all for your arguments on this side. We'll hear a rebuttal. Thank you, Your Honor. You asked me to come back with the best two to three cases on the common law. I would say Martin v. Snowden, a case from 1868, which, as you know, is around the adoption of the 14th Amendment. It walks through the common law, the English common law, and the early American law. Up until that time, and specifically says that a forfeiture like the type that occurred here is not known in American law. That was a decision by the Virginia Supreme Court that was upheld by the United States Supreme Court on alternative grounds. The U.S. Supreme Court decided that it refused to read the statute as affecting the forfeiture at issue in that case. Instead, they read forfeiture as merely meaning forfeiture of title because it was unthinkable that the legislature would intend to do such a thing absent more express language. Blackstone's commentaries, which were, as you know, read by the founders, specifically said that when the government takes property, it does so subject to an implied contract at law to sell the property and render back the overplus. The case is cited by opposing counsel like Griffin. He cites to the dissenting opinion in Griffin. And the majority... My case stands for what he thinks it stands for, Your Honor. I think it stands for the idea that the property can be taken to pay a debt, but it doesn't stand for the proposition that you can then take all the surplus proceeds in the property. That's what happened in Nelson, wasn't it? Yes, Your Honor. You just had to make sure that they were offered the chance to redeem it, right? Why is that not like your clients being offered the chance to pay their taxes? Nelson actually noted that there was a right to claim the surplus. There was a right to a judicial sale and to claim the surplus. Also, Nelson was dicta. The court was not actually allowed to reach... What do we do with this idea that, in this case, there is this idea that your clients did owe the money. The state did go through the notice requirements or whatever they're supposed to do. I guess you have a due process claim, but just assume that it was okay. I mean, you're not exactly... You don't exactly have clean hands here, right? Well, Your Honor, the plaintiffs here, most of them were on payment plans. They were trying to comply with those payment plans, and we have allegations about those. But for purposes of the takings and excessive fines claims, the government and the Michigan Supreme Court recognize this. The government's power to collect a tax is, quote, exhausted the moment that tax is collected. The government is not allowed to... Who says that? Raffaelli says that, and they're quoting Thomas Cooley. All right. And I also... So are the taxes... Do you think the taxes are collected the moment the title transfers to the government? The title on a piece of property that is worth fair market value more than what's owed in taxes? If they take the property subject to their traditional fiduciary duty to sell it, then they're only taking as much as they're owed at that time, because they will then subsequently sell it and refund the overplus, the surplus. What is this traditional fiduciary duty? I mean... It's throughout English-American law. I'm trying to reduce this to, like, you know, citations. Sure. So the traditional... Reports. One example would be the case of Slater v. Maxwell. That's a U.S. Supreme Court case. The court said yes... Is this the fiduciary duty thing we're talking about? Yes. So essentially they don't use the word fiduciary duty. They use the word a trust would be imposed. Okay. And they said that in that case the auction was unfair, and they breached that decision based on the very low selling price. Okay, but so then why can't the state... So the state has some ability to redefine property interest. So why is it that they can't say, in lieu of an auction, if the city wants to redeem it at the price, the tax delinquency, why are they not just adjusting what the property interest is at that point? I mean, they're just fiddling around with the property interest, and it turns out that it can be this deal where all you do is redeem it for the delinquency value. But why are they not allowed to do that? Why would they have to go through anything else? I mean, the state can just redefine the property. Well, that would be like saying the government can take all of your mutual funds and they don't have to look at the value of the thing taken. And we know that Magna Carta prevented the king from doing this. There's no way that the founders contemplated the government would be allowed to take property. Well, what do we do with the Eighth Circuit's decision in Tyler, then? They pretty much said that Minnesota could define it in a way that denied you even the proceeds, right? We're filing a cert petition in Tyler next month, Your Honor. You are filing a cert petition in Tyler, but, I mean, Judge Colleton's opinion seems to be pretty, I mean. He seems to have thought Nelson was binding, even though the takings question was not passed on or pressed below, and the Supreme Court has said it can't decide an issue not passed on or pressed below. I also think that Nick undermines Nelson because, again. But also, Nelson is a totally different situation. There was an opportunity to claim the surplus proceeds. They just failed to do that. It wasn't the right of redemption. I'm talking about a separate right where you don't have to pay the taxes in order to get paid for your surplus. You were able to actually request a judicial sale and be paid the overplus. So here, I briefly wanted to just address the res judicata since that came up. One minute. One minute. Thank you, Your Honor. Tawanda Hall could not have brought the takings claim against the city. The Wayside Church was binding at that point. She could not have. She could have done it in state court, right? Sure, but her federal claim that was dismissed against, that she voluntarily dismissed against the city, that court couldn't, that she can't be held res judicata barred because that court didn't have authority over the takings claim at that point. The three plaintiffs, Seconde, Miller, and American Internet, they filed their claims one year after Raffaele was dismissed. The excessive fines and takings claims in Raffaele were dismissed. And just a little bit, like a year later, the same court imposed sanctions on a party that raised the exact same claims against the same defendants here. And so I think it would be manifestly unjust to have required them to have identified the takings claims, especially since the very court where they would have filed it imposed sanctions. And lastly, I just want to note that this case is consistent with Raffaele's holding, again, that the power to collect a tax is exhausted the moment that tax is collected. Raffaele relied on Dean. And in Dean there was a transfer of the property from the foreclosing government unit to another government entity. And yet the right to unjust enrichment survived that. It was the other government entity that ultimately sold the property and took the windfall. Yet the claim survived that transfer just as the right to bring a takings claim here should survive regardless of the number of transfers that the government uses here. Okay. Very well. Thank you. Thank you. Thank all of you for your arguments. We really appreciate them. It was an interesting argument. The case will be submitted and the clerk may adjourn the court.